## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL HARPER,** | ) |
| **Plaintiff,** | ) |
| vs. | ) CIVIL NO. 04-295-WDS |
| **CLARENCE FAUST,** *et al.*, | ) |
| **Defendants.** | ) |

## **MEMORANDUM AND ORDER**

**STIEHL, District Judge:**

Three motions are pending in this case.

**MOTION FOR EXTENSION OF TIME (DOC. 12)**

In this motion, Plaintiff seeks additional time to file a motion for reconsideration. A motion pursuant to Rule 59(e) must be filed "no later than 10 days after entry of the judgment," while a motion pursuant to Rule 60(b) "shall be made within a reasonable time, and... not more than one year after the judgment... was entered..." However, a court "may not extend the time for taking any action under Rules .... 59(b), (d) and (e), 60(b)...." FED.R.CIV.P. 6(b); *see also Varhol v. National Railroad Passenger Corp.,* 909 F.2d 1557 (7th Cir. 1990); *Nugent v. Yellow Cab Co.,* 295 F.2d 794 (7th Cir.), *cert. denied,* 368 U.S. 828 (1961). Therefore, the Court cannot grant Plaintiff an extension of time to file a motion under Rule 59(e) or Rule 60(b), and this motion is **DENIED**.

**MOTION TO RECONSIDER (DOC. 13)**

Technically, a "Motion to Reconsider" does not exist under the Federal Rules of Civil Procedure. The Seventh Circuit has held, however, that a motion challenging the merits of a district court order will automatically be considered as having been filed pursuant to Rule 59(e) or Rule

60(b) of the Federal Rules of Civil Procedure.  *See, e.g., Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994); *United States v. Deutsch,* 981 F.2d 299, 300 (7th Cir. 1992).  As noted in *Deutsch*, "in cases where it is unclear whether a motion challenging a judgment on the merits is made under Rule 59(e) or Rule 60(b)," the date of service will determine how the motion will be treated.  Thus, "'if the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b).'"  *Id.* (citations omitted).  Judgment was entered in this action on June 10, 2005, but the instant motion was not filed until July 15, 2005, well after the 10-day period expired.  *See* FED.R.CIV.P. 59(e).  Therefore, as a Rule 59(e) motion, the motion is time-barred.  Under *Deutsch*, the Court will thus construe the motion as filed pursuant to Rule 60(b).

Rule 60(b) provides for relief from judgment for "mistake, inadvertence, surprise, or excusable neglect."  FED.R.CIV.P. 60(b)(1).  However, the reasons offered by a movant for setting aside a judgment under Rule 60(b) must be something that could not have been employed to obtain a reversal by direct appeal.  *See, e.g., Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000); *Parke-Chapley Constr. Co. v. Cherrington*, 865 F.2d 907, 915 (7th Cir. 1989) ("an appeal or motion for new trial, rather than a FRCP 60(b) motion, is the proper avenue to redress mistakes of law committed by the trial judge, as distinguished from clerical mistakes caused by inadvertence"); *Swam v. United States*, 327 F.2d 431, 433 (7th Cir.), *cert. denied*, 379 U.S. 852 (1964) (a belief that the Court was mistaken as a matter of law in dismissing the original petition does "not constitute the kind of mistake or inadvertence that comes within the ambit of rule 60(b).").

This civil rights action involves a disciplinary proceeding that resulted in the loss of good time credit as well as time in disciplinary segregation.  Applying the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court dismissed the case without prejudice to Plaintiff pursuing his claims in habeas corpus after first exhausting his state court remedies (*see* Doc. 11).  In his instant motion,

Plaintiff argues that the Court incorrectly applied the law. Because Plaintiff is serving a life sentence, he argues that the revocation of good conduct credit does not actually affect the duration of his confinement. Therefore, he should be allowed to proceed under Section 1983. He bases his argument on *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), which specifically held "that the unavailability of federal habeas relief does not preclude a prisoner from bringing a § 1983 action to challenge a condition of his confinement that results from a prison disciplinary action." *Id*. at 618. The Court first notes that the complaint makes no such reference to his life sentence. Further, such an argument does not involve the sort of mistake or inadvertence contemplated by Rule 60(b). Nonetheless, the Court will address the merits of Plaintiff's argument.

*Dewalt* involved a disciplinary proceeding in which an inmate was punished with loss of his prison job. *Id*. at 617. In that case, the Seventh Circuit thoroughly reviewed the history of Supreme Court case law involving the overlap between civil rights law and habeas corpus law in prison disciplinary proceedings. *Id.* at 614-16. *See generally Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Spencer v. Kemna*, 523 U.S. 1 (1998). The Seventh Circuit then examined the application of these principles by the Second Circuit. *Dewalt*, 224 F.3d at 616-17. *See Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999) (holding that *Heck* does not bar a civil rights action challenging a disciplinary proceeding that resulted in segregation time). The Seventh Circuit then found that Dewalt could proceed under Section 1983, as his sanction "[did] not challenge the fact or duration of his confinement, but only a condition of his confinement – the loss of his prison job. Consequently, under our precedent, Mr. DeWalt may not pursue a habeas action." *Dewalt*, 224 F.3d at 617.

Plaintiff interprets *Dewalt* as saying that a Section 1983 action is not barred when a disciplinary proceeding does not affect the length of an inmate's sentence. However, he is incorrect in his interpretation. The Circuit specifically stated:

- 3 -

> The [Supreme] Court simply *never* has "announced that the *Heck* rule bars a prisoner's challenge under § 1983 to an administrative or disciplinary sanction that does not affect the overall length of confinement."

*Dewalt*, 224 F.3d at 616 (citing *Jenkins, supra*) (emphasis added).  *See also Alejo v. Heller*, 328 F.3d 930, 937 (7th Cir. 2003) ("our opinion in *DeWalt* holds that where a prisoner-litigant challenges only the conditions of confinement, rather than the fact or duration of his confinement, *Heck's* favorable-termination requirement does not apply, because federal habeas corpus relief is not available").

Even if the Court were to agree with Plaintiff's argument, thus taking the good-conduct credit sanction out of the equation, Plaintiff still has not presented a viable constitutional claim.  When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  The Supreme Court has held that while a state may create a liberty interest, such state-created liberty interests are limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 483 (1995).

Again, disregarding the good-conduct credit sanction, Plaintiff argues that he was placed in disciplinary segregation for one year in violation of his right to procedural due process.  However, he has no protected liberty interest in remaining in general population.  *See, e.g., Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997) (70 days in segregation not atypical and significant hardship); *Wagner v. Hanks,* 128 F.3d 1173, 1175-76 (7th Cir. 1997) (rejecting claim that prisoner was improperly held one year in disciplinary confinement); *Whitford v. Boglino*, 63 F.3d 527, 533 (7th

Cir. 1995) (six months in segregation not atypical and significant hardship). However, even if he had a protected liberty interest in remaining in general population at Tamms, he has not presented a claim that he was denied the proper due process protections.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural protections that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to a disciplinary segregation, or otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-572.

> *Wolff* required that inmates facing disciplinary charges for misconduct be accorded [1] 24 hours' advance written notice of the charges against them; [2] a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; [3] the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex; [4] an impartial tribunal; and [5] a written statement of reasons relied on by the tribunal. 418 U.S. at 563-572.

*Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983). In this case, Plaintiff claims that he was not provided with 24 hours' advance written notice, that Defendants did not call his requested witness, and he was not allowed access to the letter in question in order to establish his innocence.

According to the exhibits attached to the complaint, the incident in question occurred on July 26, 2002. Plaintiff received a disciplinary ticket for gang activity, based upon a letter Plaintiff wrote to his sister that was intercepted in the mail room.[1] Defendant Belton's signature at the bottom of the ticket indicates that the ticket was served on Plaintiff that same evening at approximately 9:00 PM, but Plaintiff refused to sign the ticket (Exhibit A). The first hearing was held on July 30, 2002, so Plaintiff clearly had at least 24 hours' advance notice of the charges against him.

The Adjustment Committee Summary from the first hearing indicated sanctions of one year

---

[1] It is uncontested that Plaintiff wrote the letter in question (*see* Complaint, p. 8, ¶ 2, and Exhibit J).

across-the-board (Exhibit B). Plaintiff appealed that result through the grievance process (Exhibit E, pp. 1-3); on August 23, 2002, Defendant Ellis's report as grievance officer recommended that the Adjustment Committee Summary be remanded to clarify certain points (Exhibit E, pp. 4-5).[2] The amended summary (Exhibit F), dated September 18, 2002, remedied all matters addressed by Ellis. Plaintiff continued to pursue the matter through the grievance process and, in a report dated January 27, 2003, following a hearing before the Administrative Review Board, Defendant Anderson recommended that the matter be remanded to Defendant Hinsley (Exhibit H).[3] The ticket was subsequently rewritten on February 13, 2003 (Exhibit I), a second hearing was held on February 17, 2003, and the same sanctions of one year across-the-board resulted (Exhibit J). A letter finalizing the ARB report, dated February 26, 2003), upheld these sanctions (Exhibit L).

Plaintiff claims he requested that Defendant Etheridge, author of the ticket, appear as a witness. He expected her to testify to the fact that there was not an actual name in the letter, but only the nickname "Hollywood" and, without an actual name, there was no evidence that "Hollywood" was a member of an STG. Contradicting this claim is the confidential investigation by Internal Affairs, detailed in the revised ticket and second Adjustment Committee Report, which established the identity of Hollywood as a paroled inmate and known leader of the Mickey Cobra STG. As for having access to the letter, Plaintiff argues that he could have shown that there was no specific person named in the letter, only Hollywood. In fact, the letter in question *was* available to the Adjustment Committee for review, despite Plaintiff's contention otherwise (*see* Exhibit F); there

---

[2] Specifically, Ellis recommended that the summary report be amended "to 1) include a summary of the inmate's written statement; 2) clarify why the names of involved individuals were withheld for safety and security reasons; 3) clarify how it was determined that the "individual" that was to assist Ms. Holmes was a member of a STG; 4) clarify its Basis for Decision with respect to the reporting officer's observation; 5) provide verification that it physically reviewed the letter in question."

[3] Anderson specified that the remand was for "clarification regarding the individual named in the letter, specifically how it was determined who the individual is and that he is a member of an STG."

was no need for Etheridge to testify as to its contents or for Plaintiff to have access to it in order to prove its contents. Accordingly, Plaintiff's due process rights were not infringed upon by the lack of testimony from Etheridge or his lack of personal access to a letter that he had written.

Finally, the Supreme Court has also held that due process requires that the findings of the disciplinary tribunal must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999).

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 459 U.S. at 455-56.

Based upon the complaint and its attached exhibits, it is abundantly clear that the record contains more than "some evidence" to support the guilty finding. Again, Plaintiff suffered no deprivation of his constitutional rights in this instance.

In summary, the motion for reconsideration is **DENIED**. Furthermore, the motion for a ruling on that motion (Doc. 14) is now **MOOT**.

**IT IS SO ORDERED.**

**DATED: March 23, 2006.**

                                                 **s/ WILLIAM D. STIEHL**
                                                   **DISTRICT JUDGE**